UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY LEE BROYLES,

        Plaintiff,

vs.

CORRECTIONAL MEDICAL
SERVICES, INC., *et al.*,

        Defendants.
_____/

Case No. 1:07-cv-690

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendant Correctional Medical Services, Inc.'s ("CMS") motion to dismiss (docket no. 12), defendant Collette Perog's motion for summary judgment (docket no. 15), and plaintiff's "Amendment to prisoner's civil rights complaint brought under 42 U.S.C. § 1983" (docket no. 28).

    **I.**    **Background**

        Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's § 1983 claims arise from the alleged inadequate treatment of a vision problem that occurred in August and September 2005 while he was incarcerated at the Muskegon Correctional Facility (MCF). Plaintiff sets forth the following allegations in his complaint. On August 20, 2005, plaintiff complained about a partial blur in the vision of the corner of his right eye and sent out a health care request. Compl. (Statement of facts) at ¶¶ 1-3. On August 22nd, "health care" notified plaintiff that he was scheduled for an appointment on August 23rd. *Id.* at ¶ 4. This notification was false. *Id.* at ¶ 5. On August 24th, plaintiff "had a corrections officer call health care again with his complaint of the problem with his vision." *Id.* at ¶ 6. Plaintiff received a "casual external examination" with "no abnormal findings" on August 24th. *Id.* at ¶ 7. At that time, the nurse informed plaintiff that he was going to be scheduled to see an optometrist. *Id.* On August 26th, plaintiff had a corrections officer call health care to advise that "his vision was worsening." *Id.* at ¶ 8. Plaintiff was informed that he was scheduled to see an optometrist. *Id.*

On August 28th, plaintiff requested a corrections officer to call health care with his fourth complaint of the vision problem, noting "that it was getting worse with each passing day." *Id.* at ¶ 9. Health care informed plaintiff that "[t]hey did not see where he was scheduled to see the optometrist," that "they could not find his original health care request," and that he should send another health care request. *Id.* Plaintiff complained to a corrections officer and the unit ARUS that "health care was putting him off." *Id.* at ¶ 10.

On August 29th, plaintiff sent a health care request form stating as follows:

I can barely see out of my right eye, it seems as if it has a film on it or a cateract [sic], and its getting worse. I saw the nurse and he said I was scheduled to see [an] eye Doctor. After having [an] officer call health care, a nurse over there said she [didn't] see where I was scheduled to see the eye-doctor [sic] and informed that I send another kite.

*See* Health Care Request (8/29/05) attached to Compl.

Defendant Perog, a health care secretary, responded to the Health Care Request on August 31, 2005 as follows:

You have been placed back on the eye clinic waiting list and will be seen at an available eye clinic for your non-emergent symptoms (per nursing staff).

Last Exam 2-15-05.

*Id.*

Plaintiff complained to staff about this response. Compl. at ¶ 14. On September 6, 2005, plaintiff had a corrections officer call health care with a fifth complaint "that his vision was getting worse by the day." *Id.* at ¶ 16. Plaintiff was seen by a nurse that day, who examined his eye and found nothing wrong. *Id.* The nurse stated that plaintiff had been removed from the previous eye clinic list because the list of patients was so long and he had a "non-emergent" eye problem. *Id.*

An optometrist examined plaintiff on September 8, 2005, determined that he suffered from "a retina detachment in the lower section of his right eye," and scheduled him to see an eye specialist. *Id.* at ¶ 17. On September 12th, Dr. Gordon, [an ophthalmologist], examined plaintiff and determined that he had a serious retina detachment, i.e., the retina was detached from the two o'clock position to the eleven o'clock position of the eye. *Id.* at ¶ 18. Dr. Gordon advised plaintiff that he should have received immediate medical attention when the "blur" started, and that by not receiving timely medical attention, the retina had progressively detached until it had detached past the half-way point of his eye. *Id.* The doctor further stated that because the retina had detached past the half-way point of the eye, it was "very unlikely" that the vision in his right eye would be

3

corrected and returned to normal. *Id.* Plaintiff was given restrictions, and told not to exercise, run, jump or lift more than five pounds, because such acts could cause the retina to detach further. *Id.*

On September 13th, plaintiff saw another eye specialist, Dr. Lavery, who re-iterated Dr. Gordon's findings. *Id.* at ¶ 19. That same day, Dr. Gordon examined plaintiff and advised him that corrective surgery would be more complicated due to the extent and severity of the retina detachment. *Id.* at ¶ 20. Dr. Lavery performed a lens replacement surgery on plaintiff's right eye on September 14th. *Id.* at ¶ 22. At an unknown date in September 2005, plaintiff also received surgery on his left eye to seal holes in the retina on that eye. *Id.* at ¶ 23. Then, on September 29th, Dr. Gordon performed retina re-attachment surgery. *Id.* at ¶ 24. Plaintiff was advised during follow-up examinations that there was still a hole in the macula of the right eye, which was the cause of the vision impairment. *Id.* at ¶ 26. On or about September 17, 2006, Dr. Gordon advised plaintiff that the hole in the macula of his eye was still there and that it was unlikely "that his vision would ever get any better or back close to normal." *Id.* at ¶ 27.

Plaintiff filed suit in the Eastern District on January 25, 2007. The suit was transferred to this district on July 20, 2007. Plaintiff's 47-page complaint includes a pre-printed complaint for § 1983 claims as well as attachments, a brief and various statements of facts. His complaint raises two counts against defendants. In Count One, plaintiff alleges that defendant CMS and its medical secretary, defendant Perog, violated his Eight Amendment rights by failing to schedule timely and adequate medical assistance, resulting in the progressed detachment of the eye retina and irreparable damage to his vision. Compl. at pp. 10-17. In Count Two, plaintiff alleges that defendant CMS adopted and implemented a custom and procedure that was the moving force behind defendant Perog's deliberate indifference to his medical needs. *Id.* at pp. 17-23. Plaintiff

4

seeks compensatory damages from both defendants totaling $1,520,000.00 and punitive damages from defendant CMS of $7,000,000.00. *Id.* at p. 24.

### III. Defendant CMS' motion to dismiss[1]

### A. Lack of Exhaustion

Defendant CMS contends that plaintiff's claims should be dismissed for lack of proper exhaustion of two grievances, MCF 05-10-0720-12G (dated September 23, 2005) and MCF 06-03-0253-28A (dated March 13, 2006). The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 127 S. Ct. at 921. In *Woodford v. Ngo*, -- U.S. --, 126 S. Ct. 2378 (2006), the Supreme Court stated that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court *Id.* at 2382-93; 42 U.S.C. § 1997e(a).

---

[1] Defendant CMS filed its motion on March 12, 2007. When the case was transferred to this district on July 20, 2007, this motion was considered "filed" in this district as of the transfer date.

### 1. Grievance MCF 05-10-0720-12G

Defendant CMS contends that this grievance is not properly exhausted because it was untimely filed. Pursuant to the Michigan Department of Corrections (MDOC) Policy Directives, a grievance must be filed within five days of the grieved incident. *See* MDOC Policy Directive 03.02.130 ¶ X. However, the MDOC retains the option to review an untimely grievance on the merits. *See* Policy Directive 03.02.130 ¶ G.4 ("A grievance also <u>may be rejected</u> for any of the following reasons . . . The grievance is filed in an untimely manner") (emphasis added). Here, plaintiff lists two incident dates, August 20th and September 12th. Even if the court views the incident as occurring on the later date of September 12th, plaintiff's grievance was untimely, having been filed on September 23rd. However, the MDOC did not reject this grievance as untimely. The Step I response states that plaintiff was seen by nursing staff, referred to an optometrist, and that plaintiff "should have been referred to the facility Medical Service Provider after the prisoner made his third separate complaint without improvement as a precaution, even though he was scheduled to see the optometrist." *See* exh. II attached to Compl.[2] Although defendants now argue that the grievance was untimely, the MDOC did not reject the grievance on that basis, but chose to address the grievance on the merits. *See Woodford*, 126 S. Ct. at 2385, 2388 (noting that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance"). Defendants having not relied upon a defense of lack of exhaustion when it addressed plaintiff's grievance in 2005, no notions of comity are violated if this court does the same. Accordingly, CMS' motion to dismiss this claim as improperly exhausted should be denied.

---

[2] The responses at Steps II and III are illegible.

6

### 2. Grievance MCF 06-03-0253-28A

Next, CMS contends that grievance MCF 06-03-0253-28A is unexhausted because it was denied as duplicative of grievance MCF 05-10-0720-12G. The court disagrees. Under MDOC Policy Directive 03.02.130 ¶ G, a grievance may be rejected if it "raises issues that are duplicative of those raised in another grievance filed by the grievant." By denying this 2006 grievance as duplicative, the MDOC determined that the claims were raised in the earlier 2005 grievance (MCF 05-10-0720-12G). Although grievance MCF 06-03-0253-28A was not properly exhausted, this does not prevent plaintiff from raising his present claims in this court, because the MDOC addressed those claims in grievance MCF 05-10-0720-12G. Accordingly, CMS' motion to dismiss this claim as improperly exhausted should be denied.

### 3. Failure to state a claim

Finally, defendant CMS contends that plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Under Rule 12(b)(6), a complaint may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).

Defendant CMS contends that plaintiff's claim against it fails because it cannot be liable for defendant Perog's actions based upon a theory of respondeat superior, and, because plaintiff has not shown that CMS had an unconstitutional policy, practice or custom. It is well

established that "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996), citing *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658 (1978). A plaintiff who sues a private or public corporation for constitutional violations under 42 U.S.C. § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. Thus, the Sixth Circuit has held that like a municipal corporation, "CMS's liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001). Accordingly, even if defendant Perog was a CMS employee (which she is not, *see* discussion at § III.C.1., *infra*), defendant CMS would not be liable for her alleged acts under a theory of respondeat superior.

In order to state a § 1983 claim against CMS, plaintiff "must allege the existence of a policy, practice or custom that resulted in the injury to the decedent." *Moreno v. Metropolitan General Hosp.*, No. 99-5205, 2000 WL 353537 at *2 (6th Cir. March 28, 2000). "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Dashley v. Correctional Medical Services, Inc.*, 345 F.Supp.2d 1018, 1022 (E.D.Mo. 2004), *quoting Doe ex rel. Doe v. School Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir.2003). In his "brief" attached to the complaint, plaintiff alleges that CMS "has a known custom and practice of intentionally violating its written policies, and for making medical decisions based upon cost concern, and not based upon an informed medical decision[] and for turning people away to keep CMS from being stuck with the bills." Plaintiff's Compl. at p. 20. These vague allegations do not establish an unconstitutional policy, custom or practice by CMS. Plaintiff fails to allege any facts

that would support his claims: that CMS violated its written policies; that CMS made any medical decisions based upon cost concerns rather than an informed medical decision; or, that he was turned away from any service "to keep CMS from being stuck with the bills." On the contrary, plaintiff's complaint describes significant medical treatment for his vision problems: nurses examined him on multiple occasions; an optometrist examined him; he met with two ophthalmologists; he underwent three eye surgeries; and, he received post-operative care. Accordingly, the court should grant CMS' motion to dismiss.

### III. Defendant Perog's motion for summary judgment[3]

Next, defendant Perog has moved for summary judgment based upon Eleventh Amendment immunity and qualified immunity. Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

---

[3] Defendant Perog filed her motion on April 9, 2007. When the case was transferred to this district on July 20, 2007, this motions was considered "filed" in this district as of the transfer date.

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving parties version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

### A.     Defendant Perog's affidavit

In her affidavit, defendant Perog states that at all times relevant to this action, she was not a CMS employee, but rather employed as a secretary of the Bureau of Health Services at the MCF. Perog Aff. at ¶¶ 1-3, attached as exh. A. to defendant Perog's brief. As a secretary, Perog is not responsible for scheduling inmate appointments except as directed by clinical staff. *Id.* at ¶ 4. Plaintiff was seen by the nursing staff pursuant to his August 22, 2005 medical kite. *Id.* at ¶ 6. Perog scheduled plaintiff an appointment with the Optometrist after nursing staff instructed her to do so. *Id.* Defendant Perog states that plaintiff "was never removed from the eye clinic list," that there was no eye clinic at the correctional facility between August 23, 2005 and September 8, 2005, and that plaintiff was scheduled for the first available eye clinic on September 8, 2005. *Id.* at ¶ 7.

### B.     Plaintiff's medical records

Defendant Perog has submitted portions of plaintiff's medical records which are summarized as follows. On August 20, 2005, non-party Tamerla Hamilton, R.N., responded to plaintiff's phone call regarding an eye problem. Exh. 2-A attached to Perog Brief. Plaintiff was advised to apply a warm or cold compress. *Id.* The matter was not determined to be an emergency, because it was ongoing for 3 or 4 days. *Id.* On August 21st, Nurse Hamilton responded to plaintiff's symptom kite, in which he complained of a "film or cateract [sic] over the iris of right

10

eye." Exh. 2-B attached to Perog Brief. Plaintiff was scheduled for a nurse appointment on August 23rd. *Id.* The medical records do not reflect that plaintiff was examined on that date. However, non-party Mark Kelley, R.N., examined plaintiff the next day. Exh. 2-C attached to Perog Brief. At that time, plaintiff complained of "a film" over his right eye, stating that he "barely can see." *Id.* Nurse Kelley reported no abnormal findings. *Id.* Non-party Amy S. Meyer, R.N., noted on August 26th that plaintiff called twice from his unit, complaining of "not being able to see well" and requesting the eye doctor. Exh. 2-D attached to Perog Brief. Nurse Meyer informed plaintiff that no one from the eye clinic was at the facility that day, and that he was "on the list." *Id.*

As discussed, *supra*, plaintiff sent a health care kite on August 29th. Defendant Perog responded to the kite on August 31st, advising plaintiff that "[y]ou have been placed back on the eye clinic waiting list and will be seen at an available eye clinic for your non-emergent symptoms (per nursing staff)." Health Care Request (8/29/05) attached to Compl. Perog noted in the medical records that plaintiff was examined by nursing staff three times. Exh. 2-E attached to Perog Brief. Non-party William Barrett, R.N., noted on September 6, 2005 that plaintiff complained of decreasing vision in the right eye and felt that his "right eyelid is swollen." Exh. 2-F attached to Perog Brief. Nurse Barrett found no palpable or visible edema and directed plaintiff to contact health service as needed and to await eye examination. *Id.*

The medical record does not include any documentation of plaintiff's September 8th optometry examination. A medical transfer from September 13th states that plaintiff is to undergo cataract surgery and was scheduled to see Dr. Lavery on September 13, 14 and 15, 2005, for surgery and post operative visits. Exh. 2-G attached to Perog Brief. However, the medical record does not

11

include any information regarding plaintiff's ophthalmology examinations, surgery or post-operative treatment.

### C. Defendant Perog's immunity claims.

#### 1. Eleventh Amendment immunity

Plaintiff alleges that defendant Perog acted in both her official and individual capacity. In her motion, Perog contends that she is entitled to Eleventh Amendment qualified immunity for actions performed in her official capacity. Plaintiff concedes that his claim against defendant Perog in her official capacity is barred by Eleventh Amendment immunity. *See* Plaintiff's "Brief in support of response opposing defendant Perog's motion for summary judgment" at p. 2. Accordingly, defendant Perog is entitled to summary judgment for actions performed in her official capacity.

#### 2. Qualified immunity

Next, defendant Perog contends that she is entitled to qualified immunity for actions performed in her individual capacity. The court agrees. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Sixth Circuit applies a three-step inquiry to determine the existence of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Meals v. City of Memphis, Tenn.*, -- F.3d --, 2007 WL 1989016 at *7 (6th Cir. 2007), *citing Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*). When a defendant raises the issue of qualified immunity in a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the the light most favorable to the party opposing the motion. *Scott*, 127 S. Ct. 1774-75. In qualified immunity cases, this typically requires the court to adopt "the plaintiff's versions of the facts." *Id.* at 1775. However, as the Supreme Court observed in *Scott*, the trial court is not bound to blindly adopt a plaintiff's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 1776.

After reviewing the facts in the light most favorable to plaintiff, the court concludes that no constitutional violation occurred. It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The

13

objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff alleges that defendants provided inadequate care for his vision problems. However, he presents no evidence that Perog acted with deliberate indifference to his serious medical needs. Nothing in the record indicates that defendant Perog failed to schedule plaintiff for medical appointments. After Nurse Kelley examined plaintiff on August 24th, defendant Perog was instructed to schedule plaintiff for the first available appointment at the Optometry clinic. Perog followed these instructions, by scheduling plaintiff for an eye examination on September 8th, the next available eye clinic date. While plaintiff criticizes Perog for characterizing his condition as "non-emergent," she played no role in plaintiff's medical care and did not make this diagnosis. On the contrary, Perog's August 31st kite response clearly states that the nursing staff determined his condition to be "non-emergent." Defendant Perog simply scheduled plaintiff's appointments as directed by the medical staff. Plaintiff has failed to demonstrate that defendant Perog violated his constitutional rights. Accordingly, Perog is entitled to qualified immunity with respect to plaintiff's Eight Amendment claim and her motion for summary judgment should be granted.

### IV.     Plaintiff's "amendment" to the complaint

Finally, on August 13, 2007, long after the parties briefed the dispositive motions, plaintiff filed an "amendment" to his complaint. *See* docket no. 28.  In this "amendment," which is neither a proposed amended complaint nor a motion to amend, plaintiff asserts claims against three new defendants from the MCF: Tamerla Hamilton, R.N.; Amy S. Meyer, R.N.; and , John Doe "Medical Service Supervisor." *Id.*   First, plaintiff alleges that Nurse Hamilton acted with deliberate indifference to his serious medical needs when "without ever seeing or examining" plaintiff's eye, "made an incompetent, and inadequate medical determination that plaintiff Broyles['] 'serious medical need' was non-emergent."  Second, plaintiff alleges that Nurse Meyer acted with deliberate indifference on August 26, 2005, when she "failed and refused to allow plaintiff to go to health care that day," and when she failed to refer plaintiff to a medical service provider after his "third complaint without improvement."  Third, plaintiff alleges that John Doe "failed to properly supervise, develop, and provide an adequate medical system and staff to respond to medical emergencies."  Defendant CMS objects to the "amendment" as futile.

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course before being served with a responsive pleading. *See* Rule 15(a); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).  However, a party is not entitled to an amendment "as a matter of course" under Rule 15(a) if he seeks to add new defendants.  In this situation, the party must seek leave of court.  *See Moore v. State of Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) ("[a]lthough Rule 15(a) generally permits the plaintiff to amend his complaint once as a matter of course before a responsive pleading is served, here, the plaintiff's requested amendment required leave from the court because it sought to assert claims against additional defendants").  Plaintiff has

15

not sought leave of court to amend his complaint. Accordingly, his "amendment" (docket no. 28) should be stricken.

Furthermore, if plaintiff moved to amend his complaint to add these new claims, his motion would be denied as futile because it fails to state a constitutional claim. *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (a motion to amend a complaint should be denied if the amendment is would be futile"). Even if Nurse Hamilton and Nurse Meyer failed to properly to diagnose plaintiff's condition as an emergency, and "John Doe" failed to properly supervise them, such acts do not rise to the level of an Eighth Amendment claim. At most, plaintiff's claims amount to medical malpractice or negligence by health care staff. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06. *See generally, Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

### V.  Conclusion

I respectfully recommend that defendant CMS' motion to dismiss (docket no. 12) be **GRANTED,** that defendant Perog's motion for summary judgment (docket no. 15) be **GRANTED**, that plaintiff's proposed "amendment" (docket no. 28) be **STRICKEN**, and that this case be dismissed.

Dated:  January 11, 2008 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).