UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICKEY LEE BROYLES,

        Plaintiff,                        Case No. 1:07-cv-690

v.                                                     Hon. Robert J. Jonker

CORRECTIONAL MEDICAL SERVICES,
Inc., *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

### I.    Background

Plaintiff's § 1983 claims arise from the alleged inadequate treatment of a vision problem that occurred in August and September 2005 while he was incarcerated at the Muskegon Correctional Facility (MCF). Plaintiff's original complaint named two defendants, Correctional Medical Services, Inc. ("CMS") and "C. Perog" ("Perog") a medical secretary. Both CMS and Perog filed dispositive motions. *See* docket nos. 12 and 15. On January 11, 2008, the undersigned recommended that plaintiff's claims against CMS should be dismissed for failure to state a claim and that Perog was entitled to summary judgment on grounds of immunity. *See* docket no. 34. On August 13, 2007, plaintiff filed an amendment to his complaint, naming three new defendants: Tamerla Hamilton, R.N. ("Hamilton"); Amy S. Meyer, R.N. ("Meyer"); and, John Doe "Medical Service Supervisor" ("Doe"). *See* docket no. 28. I determined that plaintiff's amended complaint was futile and recommended that it be stricken. *Id.* On April 4, 2008, the report and

recommendation was approved and adopted, defendants' motions granted and the proposed amended complaint stricken. *See* docket no. 42. Plaintiff filed a notice of appeal to the Sixth Circuit Court of Appeals. *See* docket no. 43.

The Sixth Circuit Court of Appeals affirmed the dismissal of CMS and Perog. *See Rickey Lee Broyles v. Correctional Medical Services, Inc.*, No. 08-1638 (6th Cir. Jan. 23, 2009) (docket no. 46). However, the Sixth Circuit reversed this court's order striking plaintiff's amended complaint because plaintiff had an "absolute right" to amend the complaint once as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1). *Id.* The Sixth Circuit remanded the action to this court with instructions "to allow the amended complaint." *Id.*, slip op. at 6. The case has been re-opened and the amended complaint reinstated against the three new defendants, Hamilton, Meyer and Doe. *See* docket no. 28.

### II. Failure to state a claim

The filing of the amended complaint changes the nature of plaintiff's action. "A pleading that has been amended under Rule 15(a) supercedes the pleading it modifies and remains in effect throughout the action unless it is subsequently modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476, pp. 556-57 (2nd ed. 1990). "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). "[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward" and "wipes away prior pleadings." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). *See also B & H Medical, L.L.C.*

*v. ABP Admin., Inc.*, 526 F.3d 257, 268 n. 8 (6th Cir. 2008) ("a prior 'complaint is a nullity, because an amended complaint supercedes all prior complaints'") (*quoting Drake v. City of Detroit*, 2008 WL 482283 at *2 (6th Cir. Feb. 21, 2008); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) ("Plaintiff's first amended complaint, not his original complaint, was the legally operative complaint . . .") (*citing In re Atlas Van Lines* and *Massey*).

The amended complaint, which contains claims against three new defendants, is subject to review pursuant to the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Applying

these standards, I recommend that plaintiff's amended complaint be dismissed for failure to state a claim.

Plaintiff did not file a separate document entitled "amended complaint." Rather, plaintiff's amended complaint consists of the "amendment" stating claims against defendants Hamilton, Meyer and Doe (docket no. 28) and the allegations as set forth in the original complaint (docket no. 1). To minimize confusion, the court will first set forth the allegations contained in the original complaint (as summarized in the previous report and recommendation):

> On August 20, 2005, plaintiff complained about a partial blur in the vision of the corner of his right eye and sent out a health care request. Compl. (Statement of facts) at ¶¶ 1-3. On August 22nd, "health care" notified plaintiff that he was scheduled for an appointment on August 23rd. *Id.* at ¶ 4. This notification was false. *Id.* at ¶ 5. On August 24th, plaintiff "had a corrections officer call health care again with his complaint of the problem with his vision." *Id.* at ¶ 6. Plaintiff received a "casual external examination" with "no abnormal findings" on August 24th. *Id.* at ¶ 7. At that time, the nurse informed plaintiff that he was going to be scheduled to see an optometrist. *Id.* On August 26th, plaintiff had a corrections officer call health care to advise that "his vision was worsening." *Id.* at ¶ 8. Plaintiff was informed that he was scheduled to see an optometrist. *Id.*
>
> On August 28th, plaintiff requested a corrections officer to call health care with his fourth complaint of the vision problem, noting "that it was getting worse with each passing day." *Id.* at ¶ 9. Health care informed plaintiff that "[t]hey did not see where he was scheduled to see the optometrist," that "they could not find his original health care request," and that he should send another health care request. *Id.* Plaintiff complained to a corrections officer and the unit ARUS that "health care was putting him off." *Id.* at ¶ 10.
>
> > On August 29th, plaintiff sent a health care request form stating as follows: I can barely see out of my right eye, it seems as if it has a film on it or a cateract [sic], and its getting worse. I saw the nurse and he said I was scheduled to see [an] eye Doctor. After having [an] officer call health care, a nurse over there said she [didn't] see where I was scheduled to see the eye-doctor [sic] and informed that I send another kite.
>
> *See* Health Care Request (8/29/05) attached to Compl.

Defendant Perog, a health care secretary, responded to the Health Care Request on August 31, 2005 as follows:

> You have been placed back on the eye clinic waiting list and will be seen at an available eye clinic for your non-emergent symptoms (per nursing staff).
>
> Last Exam 2-15-05.

*Id.*

Plaintiff complained to staff about this response. Compl. at ¶ 14. On September 6, 2005, plaintiff had a corrections officer call health care with a fifth complaint "that his vision was getting worse by the day." *Id.* at ¶ 16. Plaintiff was seen by a nurse that day, who examined his eye and found nothing wrong. *Id.* The nurse stated that plaintiff had been removed from the previous eye clinic list because the list of patients was so long and he had a "non-emergent" eye problem. *Id.*

An optometrist examined plaintiff on September 8, 2005, determined that he suffered from "a retina detachment in the lower section of his right eye," and scheduled him to see an eye specialist. *Id.* at ¶ 17. On September 12th, Dr. Gordon, [an ophthalmologist], examined plaintiff and determined that he had a serious retina detachment, i.e., the retina was detached from the two o'clock position to the eleven o'clock position of the eye. *Id.* at ¶ 18. Dr. Gordon advised plaintiff that he should have received immediate medical attention when the "blur" started, and that by not receiving timely medical attention, the retina had progressively detached until it had detached past the half-way point of his eye. *Id.* The doctor further stated that because the retina had detached past the half-way point of the eye, it was "very unlikely" that the vision in his right eye would be corrected and returned to normal. *Id.* Plaintiff was given restrictions, and told not to exercise, run, jump or lift more than five pounds, because such acts could cause the retina to detach further. *Id.*

On September 13th, plaintiff saw another eye specialist, Dr. Lavery, who re-iterated Dr. Gordon's findings. *Id.* at ¶ 19. That same day, Dr. Gordon examined plaintiff and advised him that corrective surgery would be more complicated due to the extent and severity of the retina detachment. *Id.* at ¶ 20. Dr. Lavery performed a lens replacement surgery on plaintiff's right eye on September 14th. *Id.* at ¶ 22. At an unknown date in September 2005, plaintiff also received surgery on his left eye to seal holes in the retina on that eye. *Id.* at ¶ 23. Then, on September 29th, Dr. Gordon performed retina re-attachment surgery. *Id.* at ¶ 24. Plaintiff was advised during follow-up examinations that there was still a hole in the macula of the right eye, which was the cause of the vision impairment. *Id.* at ¶ 26. On or about September 17, 2006, Dr. Gordon advised plaintiff that the hole in the macula of his eye was still there and that it was unlikely "that his vision would ever get any better or back close to normal." *Id.* at ¶ 27.

Plaintiff filed suit in the Eastern District on January 25, 2007. The suit was transferred to this district on July 20, 2007. Plaintiff's 47-page complaint includes a pre-printed complaint for § 1983 claims as well as attachments, a brief and various statements of facts. His complaint raises two counts against defendants. In Count One, plaintiff alleges that defendant CMS and its medical secretary, defendant Perog, violated his Eight Amendment rights by failing to schedule timely and adequate medical assistance, resulting in the progressed detachment of the eye retina and irreparable damage to his vision. Compl. at pp. 10-17. In Count Two, plaintiff alleges that defendant CMS adopted and implemented a custom and procedure that was the moving force behind defendant Perog's deliberate indifference to his medical needs. *Id.* at pp. 17-23. Plaintiff seeks compensatory damages from both defendants totaling $1,520,000.00 and punitive damages from defendant CMS of $7,000,000.00. *Id.* at p. 24.

Report and Recommendation at 2-5 (docket no. 34).

The court previously determined that plaintiff's allegations set forth in the "amend complaint" failed to state a constitutional claim, providing in pertinent part:

Finally, on August 13, 2007, long after the parties briefed the dispositive motions, plaintiff filed an "amendment" to his complaint. *See* docket no. 28. In this "amendment," which is neither a proposed amended complaint nor a motion to amend, plaintiff asserts claims against three new defendants from the MCF: Tamerla Hamilton, R.N.; Amy S. Meyer, R.N.; and , John Doe "Medical Service Supervisor." *Id.* First, plaintiff alleges that Nurse Hamilton acted with deliberate indifference to his serious medical needs when "without ever seeing or examining" plaintiff's eye, "made an incompetent, and inadequate medical determination that plaintiff Broyles['] 'serious medical need' was non-emergent." Second, plaintiff alleges that Nurse Meyer acted with deliberate indifference on August 26, 2005, when she "failed and refused to allow plaintiff to go to health care that day," and when she failed to refer plaintiff to a medical service provider after his "third complaint without improvement." Third, plaintiff alleges that John Doe "failed to properly supervise, develop, and provide an adequate medical system and staff to respond to medical emergencies." Defendant CMS objects to the "amendment" as futile.

\* \* \*

. . . Even if Nurse Hamilton and Nurse Meyer failed to properly to diagnose plaintiff's condition as an emergency, and "John Doe" failed to properly supervise them, such acts do not rise to the level of an Eighth Amendment claim. At most, plaintiff's claims amount to medical malpractice or negligence by health care staff. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06. *See generally, Westlake v. Lucas*,

537 F.2d 857, 860 at n. 5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

*Id.* at 15-16 (docket no. 34).

The court previously determined that plaintiff's amended complaint failed to state a claim under the Eighth Amendment against the three new defendants, Hamilton, Meyer and Doe. Nothing in the Sixth Circuit's order of remand, which was limited to the procedural issue of whether plaintiff could file an amended complaint once as a matter of course under Fed. R. Civ. P. 15(a)(1), alters this determination.

### III. Recommendation

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that the complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

Dated: February 25, 2010
/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).